## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND CALVITTI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRUST UNDER SUPPLEMENTAL | : | No. 2:07-CV-03196-LDD |
| RETIREMENT PLAN OF KDI SYLVAN | : | |
| POOLS, INC. and GERALD HAMBURG, | : | |
| TRUSTEE | : | |
| | : | |
| and | : | |
| | : | |
| ANTHONY & SYLVAN POOLS | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of

defendant Anthony & Sylvan Pools Corporation's Motion to Dismiss Plaintiff's Amended

Complaint and Plaintiff's response thereto, it is hereby ORDERED that the Motion to Dismiss is

GRANTED and Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

LEGROME D. DAVIS
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND CALVITTI,                          :
                                           :
                    Plaintiff,             :        CIVIL ACTION
                                           :
        v.                                 :
                                           :
TRUST UNDER SUPPLEMENTAL                   :        No. 2:07-CV-03196-LDD
RETIREMENT PLAN OF KDI SYLVAN              :
POOLS, INC. and GERALD HAMBURG,            :
TRUSTEE                                    :
                                           :
                    and                    :
                                           :
ANTHONY & SYLVAN POOLS                     :
CORPORATION,                               :
                                           :
                    Defendants.            :

## ANTHONY & SYLVAN'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant Anthony & Sylvan Pools Corporation

moves to dismiss plaintiff Raymond Calvitti's Amended Complaint on the following grounds:

1.      Twelve years ago, plaintiff Raymond Calvitti was discharged from his position as

CEO of Anthony & Sylvan Pools Corporation. In connection with his separation from the

company, an agreement was reached and memorialized, the intention of which was to resolve

"all the issues and disputes related to, and to sever" the relationship between the parties.

2.      Among the things that Mr. Calvitti relinquished in the agreement was his interest

in a retirement plan that the company had established for his benefit and the right to bring the

claims that he has asserted in this action.

3.      In exchange, Mr. Calvitti received a severance package worth in excess of

$150,000 and the company's agreement not to pursue certain claims it had against him.

4.      Having reached retirement age, Mr. Calvitti now comes before the Court claiming the exact thing he bargained away – an entitlement to the funds in the retirement plan – and raises the following claims:  violation of the Employee Retirement and Income Security Act (ERISA) (Count One), and in the alternative, a variety of common law claims, including breach of contract, unjust enrichment, breach of fiduciary duties, and interference with contractual relations (Count Two).

5.      Count One of the Amended Complaint, the ERISA claim, should be dismissed because Mr. Calvitti expressly and intentionally waived his interest in the retirement plan and released any ERISA claim in the Agreement and Release.

6.      Count Two of the Amended Complaint, the common law claims, should be dismissed because these common law claims are preempted by federal law and, in any event, were expressly and intentionally released in the Agreement and Release.

7.      Alternatively, Plaintiff's claims against the Trust and the Trustee must be dismissed because the assets held in the Trust belong to Anthony & Sylvan by virtue of the release and more importantly, because Plaintiff never had any interest in or claims against the Trust or Trustee in the first place.  His only recourse, ever, would have been a contract claim against the Company.  And, Plaintiff expressly released and waived Anthony & Sylvan from any such claim in the Agreement and Release.

2

WHEREFORE, Plaintiff's Amended Complaint must be dismissed in its entirety with prejudice.

Respectfully submitted,

**HANGLEY ARONCHICK SEGAL & PUDLIN**

Dated: March 3, 2008

By: /s/ Bonnie M. Hoffman
    William T. Hangley (PA Bar # 03533)
    Michael Lieberman (PA Bar # 62425)
    Bonnie M. Hoffman (PA Bar # 201140)
One Logan Square, 27th Floor
Philadelphia, PA  19103
Tel:  (215) 568-6200
Fax: (215) 568-0300

Attorneys for Defendant,
Anthony & Sylvan Pools Corporation

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND CALVITTI,                              :
                                               :
                  Plaintiff,                   :     CIVIL ACTION
                                               :
            v.                                 :
                                               :
TRUST UNDER SUPPLEMENTAL                       :     No. 2:07-CV-03196-LDD
RETIREMENT PLAN OF KDI SYLVAN                  :
POOLS, INC. and GERALD HAMBURG,                :
TRUSTEE                                        :
                                               :
            and                                :
                                               :
ANTHONY & SYLVAN POOLS                         :
CORPORATION,                                   :
                                               :
                  Defendants.                  :

## ANTHONY & SYLVAN'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

## I.    INTRODUCTION

Twelve years ago, plaintiff Raymond Calvitti was discharged for cause from his position

as CEO of Anthony & Sylvan.[1]  When that happened he hired a lawyer and his lawyer and the

Company negotiated the terms of his separation.  An agreement was reached and memorialized,

the intention of which was to resolve "all the issues and disputes related to, and to sever" the

relationship between the parties.

---

[1]    At that time, Mr. Calvitti's employer was know as KDI Sylvan Pools, Inc.
Anthony & Sylvan Pools Corporation is a successor.  References to either "Anthony & Sylvan,"
"KDI" or "the Company" shall include both the predecessor and the successor, unless a contrary
intention is made clear.

Among the things that Mr. Calvitti relinquished in connection with the separation was his interest in a retirement plan that the Company had recently established for his benefit. He also gave up his right to bring the very claims that he has asserted in this action. In exchange, Mr. Calvitti, then in his early 50's, received a severance package worth in excess of $150,000.

Having reached retirement age, Mr. Calvitti now comes before this Court claiming the exact thing he bargained away – an entitlement to the funds in the retirement plan. Because Plaintiff's action is barred by the settlement agreement, Plaintiff's Amended Complaint should be dismissed with prejudice.

## II.    FACTS

### A.    The Supplemental Retirement Plan and the Trust Agreement.

In April 1993, Raymond Calvitti's employment agreement with KDI was amended, and KDI created a Supplemental Retirement Plan (the "Plan") intended to benefit him or his designated beneficiaries. Pursuant to the Plan, the Company entered into a Trust under Supplemental Retirement Plan (the "Trust Agreement") with the then Trustee, Mr. Calvitti's attorney, Gerald Hamburg.[2]

Before discussing the termination of Mr. Calvitti's employment two years later, and the settlement he entered into with Anthony & Sylvan, it is critically important that the Court be familiarized with the terms of Plan and the Trust Agreement because, Defendant believes, that will demonstrate that Mr. Calvitti never had any claim against either the Plan or the Trust, that his release of the Company should bar the present litigation absolutely, and that Calvitti's present contention that he released the Company and the Plan, but not the Trust, is not only wrong but

---

[2]    Copies of the Plan and the Trust Agreement are attached to Plaintiff's Amended Complaint as Exhibits A and B, respectively.

2

wholly irrelevant. A reading of the two instruments will demonstrate, unambiguously if somewhat counterintuitively, that this is so.

### *1.   The Plan:*

The Supplemental Retirement Plan provides for the creation of the Trust, and for the payment of monies into the Trust by the Company. What it does not do, however, is provide for the payment of anything *from* the Trust *to* the beneficiary. Quite the contrary, any monies paid to Mr. Calvitti are to be paid by the Company itself, directly. Upon retirement, according to the Plan, the former employee was to be paid money by the Company; the sums on deposit in the Trust were to be used only as a measuring stick of how much the Company itself would pay:

> If Employer's employment with the Company is terminated on or after Employee shall have reached the Normal Retirement Age (as hereinafter defined, *the Company shall pay to him an amount equal to the fair market value of the assets in the Trust as of such date.*

Supplemental Retirement Plan § 5.a. (emphasis added.) The provisions of the Plan incorporated the same protocol by reference, *see id.* §§ 5.b., 5.c., for circumstances where the former employee or his designated beneficiaries were paid out in other circumstances.

This point – that the only contractual obligation to Calvitti was that of the Company, and not of the Plan or the Trust, is underscored in other sections of the Plan, which reiterate that the employee has no identified interest in the assets of the Trust and that the Company itself (and not the Trust or even the Plan) was Mr. Calvitti's sole obligor:

> 15.    All benefits to be provided pursuant to this Plan are general, unfunded obligations of the Company. Neither Employee nor his beneficiary will have any interest in any specific asset of the Company as a result of this Plan.
>
> 16.    Benefits under this Plan will be paid from general assets of the Company. The assets of the Trust shall not, under any circumstances, be deemed to be an asset of this Plan, but at all

3

times shall remain a part of the general assets of the Company,
subject to claims of the Company's general creditors.

*Id.,* §§ 15, 16.

### 2. The Trust Agreement:

Not surprisingly, the Trust Under Supplemental Retirement Plan, a written agreement

between the Company and the Trustee, follows the same general approach; the obligations are

Company obligations, and the former employee has no claim against the Trust itself or against

the Plan itself. The Trust Agreement does give the Company the option of either instructing the

Trustee to dip into the monies accumulated in the Trust or making the payment itself, out of its

general funds, but the choice is entirely the Company's:

> 2.(a)   Company shall delivery [sic] to Trustee a schedule (the
> "Payment Schedule") that indicates the amounts payable in respect
> of the Plan participant . . . . Except as otherwise provided herein,
> Trustee shall make payments to the Plan participant and his
> beneficiary in accordance with such Payment Schedule.
>
> *   *   *
>
> (c)   Company may make payment of benefits directly to the
> Plan participant or his beneficiary as they become due under the
> terms of the Plan. . . .

Trust Agreement, §§ 2(a), 2(c).[3] And, just as in the Plan, the Trust Agreement makes clear that

any obligations are Company obligations (and not Plan or Trust) obligations,[4] that the Trust is a

---

[3]      Monies remaining in the Trust after the Plan's purpose had been completed were
to be returned to the Company. *Id.* § 4.

[4]      "WHEREAS, the Company has incurred or expects to incur liability under the
terms of the Plan with respect to the individual participating in the Plan; . . . ." Trust Agreement
at p. 1, Recitals.

mere "pocket" for keeping funds to satisfy those Company obligations,[5] and that the Plan

participant has no beneficial interest in any assets of the Trust.[6]

Accordingly, Mr. Calvitti is mistaken in his claim that he has right of action against either

the Trust or the Plan, even if he has (as he does not have) a right of action against the Company

itself.

### B.    Calvitti's Termination for Cause and Settlement Agreement

In October of 1995, two years after the Supplemental Retirement Plan was created,

Anthony & Sylvan terminated Mr. Calvitti's employment for cause. In connection with his

termination, and in order to resolve "all the issues and disputes related to, and to sever," the

Calvitti-Anthony & Sylvan relationship, the parties entered into an Agreement and Release dated

November 22, 1995. (*See* Am. Compl. ¶ 19; Am. Compl. Ex. "C") (The Agreement and Release

is attached hereto as Exhibit 1, because the version attached to Mr. Calvitti's Amended

Complaint is incomplete.)[7] In the Agreement and Release, Anthony & Sylvan agreed, among

---

[5]     "WHEREAS, it is the intention of the Company to make contributions to the Trust to provide itself with a source of funds to assist it in meeting its liabilities under the Plan; . . . ." *Id.*

[6]     ". . . Plan participant and his beneficiary shall have no preferred claim on, or beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of the Plan participant and his beneficiary against the Company. *Id. § 1(d).*

[7]     The copy of the Agreement and Release attached to Plaintiff's Amended Complaint as Exhibit C omits Attachment 1 to the Agreement and Release. The copy of the Agreement and Release attached hereto includes Attachment 1. That Attachment identifies certain misconduct engaged in by Calvitti, and leading to his termination, including (1) a defalcation matter in an amount in excess of $60,000; (2) improper awarding of "referral" bonuses; (3) non-business related distribution of sports tickets paid for by Sylvan; (4) non-business related dues, fees and other country club expenses paid for by Sylvan; and (5) non-business related expenses, marketing or bonus account items or other bills for personal expenses, or usage such as golf trips, greens fees and dinners

other things, (1) to waive any and all claims the company had against Mr. Calvitti as a result of his misconduct; (2) to pay Mr. Calvitti a total of $33,333.33 in two equal installments; (3) to pay him $3,846.15 per week from October 30, 1995 until June 30, 1996 (roughly $134,000); and (4) to pay his health insurance expenses through June 30, 1996. (*See* Agreement and Release ¶¶ 2-4, 7, Attachment 1.)

Mr. Calvitti agreed that this consideration "satisfied payment of *all* forms of earned wages and other compensation due and owing." (*Id.* at ¶ 3 (emphasis added).)[8] Mr. Calvitti also agreed to release and waive any and all claims that he had or might ever have against Anthony & Sylvan, the Plan itself (he actually had no such claims, as we have seen) and its affiliated entities and trustees, including any claims arising under ERISA. Paragraph 6 of the Agreement and Release states the following:

> EMPLOYEE hereby waives, releases and forever discharges EMPLOYER, . . . KDI Corporation Liquidating Trust and the Supplemental Retirement Plan of KDI Sylvan Pools, Inc., . . . and affiliated entities . . . and their trustees . . . from any and all claims, suits, debts, dues, accounts, . . . covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints, damages, sums of money, interest, attorney's fees and costs, or causes of action of any kind or nature whatsoever whether in law or equity, including, but not limited to, all claims arising out of his employment or termination of employment with EMPLOYER, including, but not limited to, . . . the Employment Agreement and Supplemental Retirement Plan, . . . the Employee Retirement Income Security Act of 1974 (ERISA) . . . and any and all other claims arising under federal, state or local law...whether known or unknown . .

---

[8]    In addition, in order to ensure that there would be no future questions about the obligations Anthony & Sylvan once had under the Supplemental Retirement Plan, the Agreement and Release specifically relieved the company from making any additional contributions to the Trust: "Employer shall have no obligation to make any additional contributions to the Trust established pursuant to the Supplemental Retirement Plan of KDI Sylvan Pools, Inc." (Agreement and Release ¶ 5.)

(*Id.* at ¶ 6.) The only exception to this broad release was that neither party released the other from any claim for breach of the Agreement and Release's terms. (*Id.*)

In the Agreement and Release, Mr. Calvitti further acknowledged that he was advised to consult with an attorney prior to executing the agreement (and he did consult with an attorney), (*id.* at ¶ 13); that he was given a period of at least 21 days to consider it[9] (*id.*); that he carefully read and fully understood its meaning and intent, (*id.* at ¶ 16); and that he signed it knowingly and voluntarily. (*id.*) Moreover, Calvitti agreed that he "intend[ed] to be bound by the promises contained in th[e] Agreement and Release for the aforesaid consideration." (*Id.* at ¶ 13.)

Despite these unambiguous promises, and despite taking Anthony & Sylvan's money, Mr. Calvitti began the instant action against Anthony & Sylvan, and recently amended his complaint to include the Trust and Trustee as defendants, to obtain payment under the Supplemental Retirement Plan, making claims under ERISA and common law claims for breach of contract, unjust enrichment, breach of fiduciary duty, and interference with contractual relations. Because the Agreement and Release, however, operates as a complete bar to Mr. Calvitti's claims against Anthony & Sylvan and because in Plaintiff has no viable claims against the Trust and Trustee, Plaintiff's Amended Complaint as to all defendants should be dismissed in its entirety with prejudice.

---

[9]    And while he executed it prior to the expiration of the 21 days, he acknowledged in the "Endorsement" attached to the Agreement and Release, subject to penalty of perjury, that he voluntarily chose to sign the Agreement prior to the expiration of the 21-day period), (*id.* at Endorsement.)

## III.   ARGUMENT

Count One of the Amended Complaint, the ERISA claim, should be dismissed because Mr. Calvitti expressly and intentionally waived and released Anthony & Sylvan from any and all claims including any ERISA claim in the Agreement and Release.  Count Two, the common law claims, should also be dismissed because these common law claims are preempted by federal law and, in any event, because they, too, were expressly and intentionally released in the Agreement and Release.  Plaintiff's claims against the Trust and Trustee should be dismissed as well because Plaintiff never had any interest in or claims against the Trust or Trustee.  Instead, his only recourse, ever, would have been a contract claim against the Company.  And Plaintiff expressly released and waived Anthony & Sylvan from any such claim in the Agreement and Release.

### A.   Standard of Review.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *see also Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992).  When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d. 1410, 1426 (3d Cir. 1997); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").  Moreover, the Court need not accept bald assertions and legal conclusions made in the guise of factual allegations as true when deciding a motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  "Dismissal for failure to state a

claim is appropriate when it is clear that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *DeBoy et al., v. Lincoln Univ. of the Commonwealth Sys. of Higher Educ.*, 2006 WL 1737437, Civ. A. No. 05-06755, *1 (E.D. Pa. June 19, 2006) (citing *Conley v. Gibson*, 355 U.S 41, 45-46 (1957) and *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984)).

### B.    Calvitti Has No Claims Against the Trust or the Trustee.

As demonstrated earlier, Mr. Calvitti cannot sue the Trust or the Trustee because he has never had any rights as against the Trust.

### C.    Calvitti Waived His ERISA Claim Against the Company.

Employees may waive ERISA claims against their employers in exchange for some benefit they receive when the waiver is made "knowingly and voluntary." *Morais v. Central Beverage Corporation Union Employee's Supplemental Retirement Plan*, 167 F.3d 709 (1st Cir. 1999); *Cuchara, CPA v. GAI-Tronics Corp.*, Civ. A. No. 04-2268, 2005 WL 1030466, *2 (3d Cir. May 4, 2005); *Feret v. First Union Corp.*, Civ. A. No. 97-6759, 1999 WL 83074, * 5 (E.D. Pa. Jan. 25, 1999).[10]

To determine whether a waiver was knowing and voluntary, courts consider the totality of the circumstances and, generally, the following factors: (1) the clarity and specificity of the

---

[10]    *See also Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 317 (S.D. New York 2003) (finding essential question in evaluating a release of claims under ERISA is whether waiver can be characterized as knowing and voluntary); *Pergosky v. Pennsylvania Power & Light Co.*, Civ. A. No. 03-6549, 2004 WL 765108, *6 (E.D. Pa. March 2, 2004) (noting that ERISA does not prevent employees from entering into settlement agreements in which they waive their right to pursue ERISA claims in exchange for some benefit they receive); *Sullivan v. CAP Gemini Ernst & Young U.S.*, 518 F. Supp. 2d 983 (N.D. Ohio 2007) (finding waiver, which unambiguously released employee's claims against employer, did not except employee's disability claim under ERISA, and was entered into knowingly and voluntarily, was valid).

release language; (2) the plaintiff's education and business experience; (3) the amount of time

plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or

should have known his rights upon execution of the release; (5) whether plaintiff was encouraged

to seek, or in fact received, the benefit of counsel; and (6) whether the consideration given in

exchange for the waiver and accepted by the employee exceeds the benefits to which the

employee was already entitled by contract or law. *Finz v. Schlessinger*, 957 F.2d 78, 82 (2d Cir.

1992); *see also Morais*, 167 F.3d at 713 n.6; *Cuchara*, 2005 WL 1030466, at *2; *Ferret,* 1999

WL 83074, at *5. An examination of these factors shows that Mr. Calvitti's ERISA waiver was

knowing and voluntary and that therefore Count I of Plaintiff's Complaint must be dismissed.

### 1. The release language is clear and specific.

In clear and specific language, the Agreement and Release extinguishes Calvitti's interest

in the Supplemental Retirement Plan and releases *any and all claims* by Mr. Calvitti against the

Company, the Supplemental Retirement Plan and any "affiliated entities" and "their trustees"

under ERISA and common law. The Agreement provides, in pertinent part:

> ...EMPLOYEE hereby waives, releases and forever discharges
> **EMPLOYER,...and the Supplemental Retirement Plan of KDI
> Sylvan Pools, Inc., . . . and affiliated entities . . . and their . . .
> trustees, . . . from any and all claims**...or causes of action of any
> kind or nature whatsoever whether in law or equity, including but
> not limited to, all claims arising out of his employment or
> termination of employment. . .**including, but not limited to, . . .
> the Employee Retirement Income Security Act of 1974
> (ERISA) . . . and any and all other claims arising under
> federal, state or local law**...whether known or unknown . .

(Agreement and Release ¶ 6 (emphasis added).)  Contracts with such unambiguous language

"must be construed according to their plain and natural meaning. *Morais*, 167 F.3d at 712 (citing

*Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995)).  Plaintiff

himself admits that "the Agreement and Release sets forth Calvitti's release of claims against KDI Sylvan Pools, Inc. and related entities and against the Plan." (Am. Compl. ¶ 21.)

Faced with this broad and all encompassing language, Plaintiff asserts the far-fetched argument that the release "[does] not mention or include a release of Calvitti's claims against the Trust" and further alleges that "the parties did not intend and did not provide that Calvitti would release his claims to the monies that were *already* deposited in the Trust [.]" (Am. Compl. ¶ 21 (emphasis added in Am. Compl.).)  In deciding a motion to dismiss, however, the Court should not accept as true such bald assertions and legal conclusions advanced in the guise of factual allegations, *see e.g., Papasan*, 478 U.S. at 286; *Morse*, 132 F.3d at 906, particularly when, as here, they contradict the documents attached to and made part of Plaintiff's Amended Complaint. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading, based thereon, the written instrument will control.")  The Trust and the funds therein of course are subsumed under the Plan and the Agreement and Release specifically includes Anthony & Sylvan, the Supplemental Retirement Plan and *affiliated entities* and *their trustees*. (Agreement and Release ¶ 6 (emphasis added).)  The Trust, having been created for the sole purpose of carrying out the purpose of the Plan, is clearly an "affiliated entity" as that term is used in the release.

In addition, if as Plaintiff suggests, the parties did not intend to include the Trust in the release, given its extremely broad scope one would expect such an intention to be expressed in the Agreement and Release. *See Sullivan v. CAP Gemini Ernst & Young U.S.*, 518 F. Supp. 2d 983, 996 (N.D. Ohio 2007) (finding plaintiff's contentions that release did not include her

11

ERISA disability claim unsupported "where the specific language of document evidences no

effort whatsoever to create an exception for such claims"). Here, the only claim preserved in the

Agreement's broad release is a claim for breach of the Agreement and Release itself.

Mr. Calvitti's reliance on extrinsic evidence – post-release correspondence between him

and Anthony & Sylvan[11] and a post-release payment to the Trust[12] – to contradict the

unambiguous contractual language he agreed to is similarly unavailing. Indeed, under

fundamental canons of contract construction, Mr. Calvitti cannot rely upon extrinsic evidence

because the terms of the agreement are clear and unambiguous: "[A] court should not consider

extrinsic evidence to give meaning to a contract unless the contract's terms are vague and

ambiguous…. In no event may extrinsic evidence be employed to contradict explicit contract

language or drain an agreement's text of all content save ink and paper." *Morais*, 167 F.3d at

713 (quoting *Smart*, 70 F.3d at 179-80). As the Court in *Morais* pointed out, and as is true in

this case, "in the face of such unambiguous language, it would require a substantial departure

from basic contract principles … to validate [plaintiff's] self-serving effort, years later, to

generate a factual dispute…." *Morais*, 167 F.3d at 713.

---

[11]    Mr. Calvitti has asserted that he asked for an "early" payment of money to which
he claimed entitlement under the plan. (*See* Am. Compl. ¶ 23) Anthony & Sylvan rejected the
request and stated that "the Board of Directors and the management of Anthony & Sylvan has
determined to continue administration of the Plan in accordance with its terms." (*See* Am.
Compl. Ex. D.) To be sure, the correspondence did not point out that Calvitti had bargained
away all his rights in the plan; it was the Agreement and Release that did that.

[12]    Mr. Calvitti also alleges that because the Company made an additional
contribution to the Trust after the effective date of the Agreement and Release he must not have
released his interest in the Trust. (*See* Am. Compl. ¶ 22.) Whether Anthony & Sylvan
erroneously made a payment after the Agreement and Release was signed is irrelevant. The
question before the Court is whether in the Agreement and Release Calvitti bargained away all of
his rights to the funds paid pursuant to the Plan.

12

Moreover, Plaintiff's claims against the Trust and Trustee should also be dismissed because Mr. Calvitti never had any interest in, or claims against the Trust. This is made explicit in the Trust Agreement, which provides: "Plan participant and his beneficiary shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan and th[e] Trust Agreement shall be mere unsecured contractual rights of the Plan participant and his beneficiary against Company." (Trust Agreement ¶ 1(d).) Thus, Mr. Calvitti has no rights or claims to assert against the Trust or Trustee. Instead, his only recourse, ever, would have been a contract claim against the Company. And, as discussed above, he expressly released and waived Anthony & Sylvan from any such claim in the Agreement and Release.

Mr. Calvitti alleges in his Amended Complaint that the Trust is irrevocable and that except in the event of the company's insolvency, the company has no power to direct the Trustee to return to the company the money in the Trust. (*See* Am. Compl. ¶ 14.) Irrevocable in this context simply means that the Trust could only be terminated upon written approval of the beneficiary. In fact, section 12(c) of the Trust Agreement provides just that: "Upon written approval of the participant or his beneficiary entitled to payment of benefits pursuant to the terms of the Plan, Company may terminate this Trust prior to the time all benefit payments under the Plan have been made." Despite his protests to the contrary, Mr. Calvitti provided the required written approval when he signed the Agreement and Release.

### 2. *The Other Factors Looked to by Courts Also Demonstrate a Knowing and Voluntary Waiver.*

The second factor courts consider in deciding whether an ERISA waiver was knowing and voluntary is whether the plaintiff was an educated professional. In this case, there is no

13

question that Mr. Calvitti is an educated professional. At the time he executed the Agreement and Release he was the Chief Executive Officer of KDI, a sophisticated businessman.

Factor three, whether plaintiff was given time to consider the release, also weighs in favor of finding that Mr. Calvitti knowingly and voluntarily waived his ERISA claim. He was given a period of at least 21 days to consider the Agreement and Release, a sufficient time to consider and execute a release. *See Cuchara*, 2005 WL 1030466, *3 (finding 21 days sufficient time). While Calvitti did sign the Agreement and Release before the expiration of the 21 days, he acknowledged in the "Endorsement" attached to the Agreement and Release, subject to penalty of perjury, that he voluntarily chose to sign the Agreement prior to the expiration of the 21-day period. In addition, he was given a period of seven days following the execution of the Agreement and Release to revoke the Agreement, which he did not do. (Agreement and Release ¶ 13.)

The fourth factor, whether Calvitti knew his rights when he executed the agreement, also weighs in favor of finding a waiver. In the Agreement and Release, Mr. Calvitti acknowledged that he "carefully read the foregoing Agreement and Release, that he fully underst[ood] the meaning and intent of th[e Agreement and Release]." (*Id.* at ¶ 16.) In addition, given the clarity of the release, he knew or should have known his rights upon execution of the Agreement. *See Morais*, 167 F.3d 709, 715 (finding that clarity of release deflated any argument that employee misunderstood the release and its scope).

In addition, Mr. Calvitti was represented by and had the advice of counsel during his separation with Anthony & Sylvan and the negotiation and execution of the Agreement and

Release – the same firm that originally represented him in the instant litigation.[13]  (Agreement and Release at ¶ 13.)

Finally, Mr. Calvitti received consideration in exchange for the release.  He received the following compensation and other benefits which he would not otherwise have been entitled to because he was terminated from Anthony & Sylvan for cause:  $33,333.33 in two installments, $3,846.15 per week from October 30, 1995 until June 30, 1996, and health insurance through June 30, 1996.  (*Id.* at ¶¶ 2-4.)  A package worth in excess of $150,000.  In addition, and perhaps more valuable than the compensation he received, Anthony & Sylvan also agreed to waive all the claims it had or might ever have against Mr. Calvitti resulting from his misconduct while employed by the company (described in part in Attachment 1 to the Agreement and Release). (*Id.* at ¶ 7.)

### 3. *Knowing and voluntary waivers have been found in circumstances less compelling than these.*

Knowing and voluntary waivers have been found in circumstances less compelling than these.  In *Cuchara*, the Third Circuit dismissed plaintiff's complaint which alleged, among others, violations of ERISA, because plaintiff knowingly and voluntarily entered into a release of his claims even though the plaintiff was *not* represented by counsel when he executed the release.  The Court found a knowing and voluntarily waiver because (1) the release was clear and specific – it stated employee "releases and forever discharges Employer … of and from any and

---

[13]     Plaintiff alleges in his Amended Complaint that Anthony & Sylvan did not seek to remove Mr. Hamburg as Trustee before seeking to disqualify Calvitti's original counsel "because it knew if it were successful in removing the Trustee it would have no basis to seek the disqualification of counsel." (Am. Compl. ¶ 25.)  On the contrary, Plaintiff's original counsel, the Hamburg, Rubin, Mullin & Maxwell firm, would have been disqualified regardless of whether Mr. Hamburg had first been removed as Trustee because both suffered from an inherent conflict of interest.

all claims, known and unknown" and specifically listed certain claims including an ERISA claim; (2) plaintiff received compensation to which he was not otherwise entitled to, i.e., four weeks salary; and (3) plaintiff was not rushed into signing the release, i.e., he was given 21 days to consider it. 2005 WL 1030466, *3.

The First Circuit in *Morais* similarly found a knowing and voluntary waiver and dismissed plaintiff's ERISA claim, even though (unlike the present situation) four of the above six factors weighed *against* a finding of waiver. 167 F.3d at 713. The plaintiff in *Morais* argued that he was on medication that impaired his judgment when he signed the document, that he was a common laborer with an eighth grade education confronting the company president, and that he was expected to sign the agreement when it was presented to him without the opportunity for him to obtain the advice of an attorney or other independent source. *Id.* The Court, however, found that the language of the document, which stated that plaintiff had been given the opportunity to consult with attorneys and union officials and arrived at the decision to execute it after he understood it, and explicitly stated that all claims or causes of action against, *inter alia*, defendant, its officers, the company's supplemental retirement plan and its administrator are released and forever discharged, was clear and unambiguous. *Id.* In addition, the Court found that consideration, $5,000, was received in exchange for the release. *Morais*, 167 F.3d at 714.

Mr. Calvitti, like plaintiffs in *Cuchara* and *Morais*, knowingly and voluntarily waived his ERISA claim. The release language in this case, like the release language in *Cuchara*, is clear and unambiguous. Just like the release in *Cuchara*, it specifically releases Calvitti's ERISA claim, and just like the release in *Morais,* it specifically releases the Supplemental Retirement Plan by name. Moreover, Mr. Calvitti, like plaintiffs in *Cuchara* and *Morais*, received consideration – eight months salary plus an additional $33,333.33 and Anthony & Sylvan's

16

agreement not to pursue the claims it had against him for his misconduct – in exchange for the release. Finally, like the plaintiff in *Cuchara*, Mr. Calvitti had 21 days to consider the Agreement and Release. Unlike plaintiff in *Cuchara*, however, Plaintiff in this case *was* represented by counsel. And unlike plaintiff in *Morais*, Mr. Calvitti was the CEO of a corporation and a sophisticated businessman.

Given that every factor in this case weighs in favor of finding a valid waiver, there can only be one conclusion – that Mr. Calvitti signed the Agreement and Release knowingly and voluntarily and that the release validly waived the ERISA claim he brings before this Court. Therefore, Count One of Plaintiff's Complaint should be dismissed.

> **D.      Count II, the Common Law Claims, Should also be Dismissed Because they are Preempted by Federal Law, And Because Calvitti Expressly Waived Them as Well.**

Mr. Calvitti also asserts common law causes of action against Anthony & Sylvan – breach of contract, unjust enrichment, breach of fiduciary duties, and interference with contractual relations. Because these claims relate to an ERISA-governed benefits plan, they are preempted by ERISA. In any event, Mr. Calvitti waived his right to pursue these claims in the Agreement and Release, just as he waived his ERISA claims.

> *1.   The common law claims are preempted by ERISA.*

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, "is designed to 'provide a uniform regulatory regime over an employee benefit plan. To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. §1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern.'" *Early v. U.S. Life Ins. Co in the City of New York*, 222 Fed Appx. 149, 151 (3d Cir. 2007) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). ERISA supersedes any

and all state laws insofar as they may relate to any employee benefit plan. *Lawson v. Nationwide Mutual Ins. Co.*, Civ. A. No. 05-1249, 2005 WL 1533102, *6 (E.D. Pa. 2005) (citing 29 U.S.C. § 1144(a)(2007)); *see also Early*, 222 Fed. Appx at 151-52. The ERISA preemption provision is expansive. *Lawson,* 2005 WL 1533102, *6. "Because of this expansiveness, the Supreme Court has given the phrase 'relate to' . . . its broad common-sense meaning, such that a state law 'relates[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987)). By this definition then, a "state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Lawson,* 2005 WL 1533102, *6 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (internal quotations omitted)).

Following these well established rules regarding preemption, the *Lawson* Court dismissed plaintiff's claims for breach of contract, unjust enrichment, and breach of fiduciary duties because they all related to the employee's benefits plan. *Lawson*, 2005 WL 1533102, *7. The claims dismissed in *Lawson* are the same claims Plaintiff asserts in this action. And, like the claims in *Lawson*, Count Two relates to an employee benefit plan – the Supplemental Retirement Plan. Specifically, each common law claim rests on Mr. Calvitti's assertion that Anthony & Sylvan wrongfully denied him the benefits he was supposedly due under the Supplemental Retirement Plan. In addition, Mr. Calvitti seeks relief in the form of the payment of benefits under the Supplemental Retirement Plan. These claims therefore "relate to" an employee benefit

18

plan. As such, they are preempted by ERISA.[14] Accordingly, Count Two of the Amended
Complaint should be dismissed.[15]

### 2. Calvitti released his common law claims.

If this Court were to find that Mr. Calvitti's common law claims were not preempted by
federal law, these claims would still fail as a matter of Pennsylvania law for the same reason that
his ERISA claim fails: Mr. Calvitti released them unequivocally. *See Bickings v. Bethlehem
Lukens Plate*, 82 F. Supp. 2d 402, 405 (E.D. Pa. 2000).

As discussed earlier, Mr. Calvitti released the company from any and all claims "of any
kind or nature whatsoever whether in law or equity," and "whether known or unknown."
(Agreement and Release ¶ 6.) The release specifically includes claims "arising out of [Calvitti's]
employment or termination." (*Id.*) In addition, it specifically includes claims for breach of
contract of the Supplemental Retirement Plan and any and all other claims arising under state
law. (*Id.*)

Mr. Calvitti's attempts to introduce extrinsic evidence to refute the clear and
unambiguous terms of the release fail under the common law for the same reason that they fail
under federal law. *See Z & L Lumber Co. of Atlasberg v. Nordquist*, 502 A.2d 697 (Pa. Super.
Ct. 1985); *Metzger v. Clifford Realty Corp.*, 476 A.2d 1 (Pa. Super. Ct. 1984); *Com., Dept. of
Transp. v. E-Z Parks, Inc.*, 620 A.2d 712 (Pa. Cmwlth. Ct. 1993).

[14]    That Plaintiff pled these claims in the alternative to his ERISA claims does not
save them from dismissal. Plaintiff himself has alleged that his claim is governed by ERISA. In
any case, as discussed below, Mr. Calvitti released his common law claims in the Agreement and
Release as well.

[15]    In the event that the Court dismisses Plaintiff's common law claims as preempted
but does not also dismiss Count I, Anthony & Sylvan reserves its right to move to strike
Plaintiff's jury demand.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Amended Complaint must be dismissed in its entirety with prejudice.

Respectfully submitted,

**HANGLEY ARONCHICK SEGAL & PUDLIN**

Dated: March 3, 2008

By: /s/ Bonnie M. Hoffman
William T. Hangley (PA Bar # 03533)
Michael Lieberman (PA Bar # 62425)
Bonnie M. Hoffman (PA Bar # 201140)
One Logan Square, 27th Floor
Philadelphia, PA  19103
Tel:  (215) 568-6200
Fax: (215) 568-0300

Attorneys for Defendant,
Anthony & Sylvan Pools Corporation

20

## CERTIFICATE OF SERVICE

I, Bonnie M. Hoffman, hereby certify that on March 3, 2008, I caused a true and correct

copy of the foregoing Proposed Form of Order, Motion to Dismiss and Memorandum of Law in

Support of Motion to Dismiss of Defendant Anthony & Sylvan Pools Corporation was filed with

the United States District Court for the Eastern District of Pennsylvania via the Court's

Electronic Filing System and served simultaneously by electronic mail on the following counsel

of record:

> Michael G. Trachtman, Esquire
> Powell, Trachtman, Logan, Carrle & Lombardo, P.C.
> 475 Allendale Road, Suite 200
> King of Prussia, PA 19406
> (610) 354-9700
> *Counsel for Plaintiff*

and by regular first class mail upon:

> Lisa R. Marone, Esquire
> Powell, Trachtman, Logan, Carrle & Lombardo, P.C.
> 475 Allendale Road, Suite 200
> King of Prussia, PA 19406
> (610) 354-9700
> *Counsel for Plaintiff*
>
> Gerald Hamburg, Esquire
> Hamburg, Rubin, Mullin, Maxwell & Lupin
> ACTS Center-Blue Bell
> 375 Morris Road
> Lansdale, PA 19446-0773
>
> Gerald Hamburg, Esquire
> P.O. Box 325
> Gwynedd Valley, PA 19437-0325

> /s/ Bonnie M. Hoffman
> Bonnie M. Hoffman

# EXHIBIT 1

SENT BY:HAMBURG RUBIN MULLIN ;11-22-95 ; 1:18PM ;
11-2.'95  05:17PM PROJ. AP'AL DEPT.
JIG 844 2400~F 3/11
P92

# AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is hereby entered into by and between RAYMOND J. CALVITTI (hereinafter "EMPLOYEE") and KDI SYLVAN POOLS, INC, (hereinafter "EMPLOYER").

WHEREAS, effective October 30, 1995, the employment relationship that previously existed between EMPLOYEE and EMPLOYER terminated;

WHEREAS, EMPLOYER and EMPLOYEE have mutually agreed to resolve all issues and disputes related to, and to sever, the said employment relationship amicably;

NOW, THEREFORE, fully intending to be legally bound hereby, in consideration of the mutual promises and undertakings set forth herein, EMPLOYEE and EMPLOYER agree as follows:

1.)    EMPLOYEE's employment relationship with EMPLOYER was terminated effective October 30, 1995.

2.)    EMPLOYER shall pay to the EMPLOYEE the gross amount of Three Thousand Eight Hundred Forty-Six Dollars and Fifteen Cents ($3,846.15), less applicable tax withholding deductions, per week, for the period beginning on October 30, 1995 and ending on June 30, 1996.  Provided, however, the first payment shall not be due and payable until eight (8) days following the execution of this Agreement and Release, which payment shall include all sums due from October 30, 1995 until such date.

3.)    In addition to the amount specified in Paragraph 2 above, EMPLOYER shall pay to EMPLOYEE the total sum of Thirty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($33,333.33), to be paid in two (2) equal installments on March 31, 1996 and June 30, 1996, respectively. EMPLOYEE acknowledges that the payments called for in Paragraph Nos. 2, 3 and 4 satisfy payment of all forms of earned wages and other compensation due and owing except as otherwise set forth herein.

4.)    In the event EMPLOYEE makes a timely and appropriate COBRA election, EMPLOYER agrees to pay the health insurance premiums for EMPLOYEE for coverage through and including the month of June, 1996. EMPLOYEE may continue coverage after June 30, 1996 at his own expense in accordance with COBRA requirements.

5.)    It is agreed that EMPLOYER shall have no obligation to make any additional contributions to the Trust established pursuant to the Supplemental Retirement Plan of KDI Sylvan Pools, Inc.

6.)    For and in consideration of the monies and benefits paid to EMPLOYEE by EMPLOYER, as more fully described in Paragraph Nos. 2, 3 and 4 above, and for other good and valuable consideration, EMPLOYEE hereby waives, releases and forever discharges EMPLOYER, General Aquatics, Inc., KDI Corporation, KDI Corporation Liquidating Trust and the Supplemental Retirement Plan of KDI Sylvan Pools, Inc., their assigns, predecessors, successors, trustees, and affiliated entities, and their current or former stockholders, officers, directors, administrators, agents, trustees, servants and employees, individually and as representatives of the corporate entity (hereinafter

2.

SENT BY:HAMBURG RUBIN MULLIN   :11 22-95 : 4:30PM :
:T 21-95  U5.11PM FROM LEGAL DEPT.

                                                                        2C4

collectively referred to as RELEASEES), from any and all claims, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints, damages, sums of money, interest, attorney's fees and costs, or causes of action of any kind or nature whatsoever whether in law or equity, including, but not limited to, all claims arising out of his employment or termination of employment with EMPLOYER, including, but not limited to, all claims for wrongful discharge, breach of contract (either express or implied), including but not limited to the Employment Agreement and Supplemental Retirement Plan, emotional distress, fraud, misrepresentation, defamation, claims arising under the Civil Rights Acts of 1964 and 1991 as amended, the Americans With Disabilities Act, the Age Discrimination in Employment Act (ADEA), the National Labor Relations Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974 (ERISA), the Family and Medical Leave Act, the Pennsylvania Human Relations Act, the Pennsylvania Wage Payment & Collection Law, the Pennsylvania Minimum Wage Act of 1968, the Pennsylvania Equal Pay Law, and any and all other claims arising under federal, state or local law, rule, regulation, constitution, ordinance or public policy whether known or unknown; provided, however that parties do not release each other from any claim of breach of the terms of this Agreement and Release.

    7.)    For and in consideration of the release given by EMPLOYEE in Paragraph 6 hereof, and for other good and valuable consideration, EMPLOYER hereby waives, releases and forever discharges EMPLOYEE, his heirs, executors and administrators from any and all claims, suits, debts, dues, accounts, reckonings, bonds, bills, specialties,

3

SENT BY:HAMBURG RUBIN MULLIN   ;11-22-95 : 4:21PM ;                    —              513 913 2438;# 5/11

covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints, damages, sums of money, interest, attorneys fees and costs, causes of action of any kind or nature whatsoever whether in law or equity all claims arising out of the occurrences described and set forth on Attachment 1 hereto, as well as any other claims not described in Attachment 1 hereto, arising out of, or related to, EMPLOYEE'S employment with EMPLOYER which (i) have a value of less than Five Thousand Dollars ($5,000.00) per individual occurrence, or (ii) have an aggregate value of less than Fifty Thousand Dollars ($50,000.00). Provided, however, that in no event shall EMPLOYER have the right to institute any claims, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, promises, charges, complaints, damages, sums of money, interest, attorneys fees and costs, causes of action of any kind or nature whatsoever whether in law or in equity if EMPLOYER has not done so on or before December 31, 1996.

8.)   EMPLOYEE agrees that the payments made and other consideration received pursuant to this Agreement and Release are not to be construed as an admission of legal liability by RELEASEES and that no person or entity shall utilize this Agreement and Release or the consideration received pursuant to this Agreement and Release as evidence of any admission of liability since RELEASEES expressly deny liability.

9.)   EMPLOYEE affirms that the only consideration for the signing of this Agreement and Release are the terms stated herein and that no other promise or agreement of any kind has been made to him by any person or entity whatsoever to

4

SENT BY:HAMBURG RUBIN MULLIN   :11-22-95 ; 4:21PM ;                                    513 943 2498;# b. 11
                                                                                                    763

cause him to sign this Agreement and Release.

10.)    EMPLOYEE and EMPLOYER affirm that this Agreement and Release sets forth the entire agreement between the parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous agreements or understandings between the parties with respect to the subject matter contained herein. Further, there are no representations, arrangements or understandings, either oral or written, between the parties, which are not fully expressed herein. Finally, no alteration or other modification of this Agreement and Release shall be effective unless made in writing and signed by both parties.

At the same time, however, EMPLOYEE expressly acknowledges that as a condition of his employment, he entered into an Employment Agreement with EMPLOYER.  A copy of the Agreement is attached hereto as Exhibit A and is incorporated by reference as though fully set forth herein.   The EMPLOYEE acknowledges that pursuant to the Employment Agreement attached as Exhibit A, he is obligated to refrain from certain practices as set forth in the Employment Agreement, in particular in Paragraph Nos. 6 and 7 of the Employment Agreement. EMPLOYEE acknowledges and covenants that he will comply with each of the covenants as stated in the Employment Agreement.  EMPLOYEE acknowledges and agrees that Paragraph Nos. 6 and 7 of the Employment Agreement shall remain in full force and effect through June 30, 1996, and thereafter throughout the totality of the restrictive periods specified in that Agreement and that the six (6) month and two (2) year time periods provided for in Paragraphs 7(a) and (b), respectively, shall begin to run from July 1, 1996.

5

SENT BY:HAMBURG RUBIN MULLIN  :11-22-95 : 4:22PM :

11.)    Both EMPLOYEE and EMPLOYER agree that the terms of this Agreement and Release shall remain confidential and shall not be divulged under any circumstances to any third parties unless authorized, in writing, by both EMPLOYEE and EMPLOYER, or as otherwise ordered by a Court of competent jurisdiction. EMPLOYEE represents that the terms of this Agreement and Release have not been discussed with any other individual, other than counsel, prior to the date of the execution of this Agreement and Release.

12.)    Both EMPLOYEE and EMPLOYER agree not to publicly or privately disparage the other party, its personnel or services.

13.)    EMPLOYEE acknowledges that EMPLOYER has advised him to consult with an attorney prior to executing this Agreement and Release. EMPLOYEE also acknowledges that he has been given a period of at least twenty-one (21) days within which to consider the Agreement and Release. Moreover, EMPLOYEE has a period of seven (7) days following the execution of this Agreement and Release to revoke the Agreement and it shall not become effective or enforceable until the revocation period has expired.

14.)    EMPLOYEE certifies that he has returned to EMPLOYER all keys to any premises, identification cards, credit cards, leased automobile and any other property or information of EMPLOYER in EMPLOYEE's possession, custody, or control including, but not limited to, any information contained in any computer files maintained by EMPLOYER during his employment with EMPLOYER. EMPLOYEE certifies that he has not kept the originals or copies of any documents, files, or other property of EMPLOYER

6

SENT BY:HAMBURG RUBIN MULLIN   ;11-22-95 : 4:22PM :

which he obtained or received during his employment with EMPLOYER.

15.)    Should any clause of this Agreement and Release be found to be in violation of law, or ineffective or barred for any reason whatsoever, the remainder of the Agreement shall be in full force and effect; provided, however, that if any release, waiver or agreement set forth in this Agreement and Release is declared to be invalid, illegal or unenforceable in whole or in part, EMPLOYER shall have the right to elect to consider its obligations under this Agreement and Release to be nullified and in such case, any payments or benefits that had been or were to be afforded under this Agreement and Release shall be returned to EMPLOYER with interest.

16.)    EMPLOYEE affirms that he has carefully read the foregoing Agreement and Release, that he fully understands the meaning and intent of this document, that he has signed the Agreement and Release voluntarily and knowingly, and that he intends to be bound by the promises contained in this Agreement and Release for the aforesaid consideration.

17.)    Any dispute, controversy or difference which may arise between the parties out of or in relation to this Agreement shall finally be settled in the County of Montgomery, Commonwealth of Pennsylvania, in accordance with the rules of the American Arbitration Association, whose award shall be final and binding upon all parties. The decision of the Arbitrators shall be determinative, binding and conclusive of the issue as between the parties.

7

SENT BY:HAMBURG RUBIN MULLIN   :11-22-95 : 4:22PM :                         513 943 2138:# 9/11

IN WITNESS WHEREOF, EMPLOYEE and the authorized representative of
EMPLOYER have executed this Agreement and Release on the dates indicated below.

By: _____   Dated: 11/22/95
       Raymond J. Calvitti

By: _____   Dated: 11/22/95
       Kevan K. Langner – Secretary
       KDI Sylvan Pools, Inc.

8

SENT BY:HAMBURG RUBIN MULLIN   :11-22-95 : 4:23PM :                    —          513 943 2438:#10/11
   11-21-95  09.;17# FROM .# : DEF1.

<u>**Attachment 1**</u>

<u>**Calvitti Settlement Agreement**</u>

1.)   1993 defalcation matter in an amount in excess of $60,000, involving Julie
      Jones. .

2.)   Awarding of "referral" bonuses to Legendary or Frank Sciarra.

3.)   Non–business related distribution of sports tickets paid for by Sylvan.

4.)   Non–business related dues, fees and other country club expenses paid for
      by Sylvan.

5.)   Non–business related expense, marketing or bonus account items or other
      bills for personal expenses, or usage such as golf trips, greens fees and
      dinners.

6.)   Reimbursed or non–reimbursed usage of Sylvan employees and materials
      and equipment for the performance of work and services or other usage
      of a non–business nature.

7.)   Reimbursed or non–reimbursed usage of employees and materials for
      work performed for Legendary Covers, Inc. and any related payments to
      Legendary for such work and materials.

SENT BY:HAMBURG RUBIN MULLIN  ;11-22-95 ; 4:23PM ;
11-21-95  05:11PM FROM LEO    DEPT.                      513 945 :4463:#117:11

## ENDORSEMENT

I, Raymond J. Calvitti, hereby acknowledge that I was given 21 days to consider the foregoing Agreement and voluntarily chose to sign the Agreement prior to the expiration of the 21-day period.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct.

EXECUTED this _22ⁿᵈ_ day of ___NOV___, 1995, at _Lansdale_ Pennsylvania.

_____
Raymond J. Calvitti